LOUISVILLE & NASHVILLE RAILROAD COMPANY AND NASHVILLE, CHATTANOOGA & ST. LOUIS RAILROAD COMPANY *v.* THE STATE OF TENNESSEE.

1. CORPORATIONS. *Railroads. Crossing streets with connecting lines. Nuisance. Eminent domain. Secs. 1119, 1118 and 1120 of the Code Construed.* Sec. 1118 of the Code provides that "all the railroads of the State have power to construct their roads so as to cross each other, if necessary, by the main tracks or branches, or to unite with each other as with branches." *Held,* that the plain meaning of this section, read by the light of secs. 1118 and 1120, was that various roads might form a homogeneous system, and that these roads, or any future roads, might unite by building tracks from one to the other for the purpose of transporting loaded cars.

Code cited: Secs. 1119, 1118, 1120.

2. SAME. *Same. Power of railroad companies.* This power being conferred on corporations which had built, or were empowered to construct railroads, and had already the power, in so doing, to exercise the right of eminent domain, and to purchase land for the purposes of the track, needed no additional power to be conferred in order to carry out the objects of the Legislature.

3. SAME. *Same. Necessity of sec. 1119.* It was necessary to authorize them to build further in order make to the connections contemplated, but they possessed the power already to carry out the work authorized.

Code cited: Sec. 1119.

FROM DAVIDSON.

Appeal from the Criminal Court at Nashville. T. N. FRAZIER, J.

SMITH, BAXTER & ALLISON and EAST & FOGG for Railroad Companies.

DEMOSS & MALONE for the State.

FREEMAN, J., delivered the opinion of the court.

This is an indictment containing several counts, only one of which need be noticed, that is the first, as the jury acquitted the defendants on the other counts.

This count is for obstructing Cedar street, by the erection of a trestle across the same for the passage of trains from the Louisville depot, on College street, to the depot of the Nasville, Chattanooga & St. Louis road, at the end of Church street. His honor, the criminal Judge, charged the jury, that, by the charters of the roads, they were not authorized to build this connection. We need not at present examine this question. He then proceeded to construe the Code, sec. 1119, and charged the jury that the companies would have the right to connect their roads by rail, under this section, so that they could pass trains, from one to the other, *provided* they made such connection on their own ground, and provided. they did not obstruct, cross or interfere with the rights of the public, in connecting or uniting said roads, by running over or across ancient public streets or highways. He then tells the jury they must convict, if the trestle was made over such street or highway, and it thereby rendered less safe and convenient to travelers on the street or highway than before. The plain purport of the charge is, that the parties had no right, under the Code, to cross the highway with their track in order to make the connection.

The question on which the case must turn here, is, was this a correct statement of the law? for un-

der it the jury were bound to find the verdict they have given.

The ·section 1119, referred to, is as follows: " All the railroads of the State have power to construct their roads so as to cross each other, if necessary, by ·the main trunk or branches, or to unite with each ·other as with branches.

Secs. 1118 and 1120 throw light on the general policy embodied in the act of 1852, from which these three sections are taken.     The first section is, "The guage of all the roads in the State, except those con-·necting with railroads of other States, of different gauge, is required to be five feet."    The other sec-tion provides that, "every railroad company, when re-quired, shall receive on its road and branches the full loaded freight cars of all other companies, transport them to their destination, and return them, without ·charging for the transportation of the goods, wares, and merchandise, or produce therein, a greater rate of freight than they charge for similar transportation in their own cars."    The plain, unmistakable purport of this is, that they might form a homogeneous system, the cars of every road being adapted in gauge to the track of every other road.    Then the provision that they might unite with each other, is but to carry out this idea, for it would be useless to require them to be of the same gauge, if they were not to be con-nected.    Without connection, the one with the other, they might all have been of different gauge, so far as furnishing facilities for passing cars from one to the other was concerned.    They could only be thus passed

by means of the connecting line of track for the purpose. The last provision was intended to regulate the freights to be charged on cars thus passed from one road to the other, and compell the roads, created by this act or expected to grow out of it, to act liberally and justly in the matter, so as to encourage such cunnections as were contemplated, and thus give our people the largest railroad facilities at least expense.

In addition ot this, the State was interested in increasing the trade and travel on these roads, having by this act provided for a large advance of the State credit for the benefit of the roads contemplated. It needed no great foresight to see, that if the freight, say at Nashville, destined to pass south, had to break bulk and be carried in drays and wagons from one to the other, competing lines in adjoining States, where such a state of things did not exist, would very soon have all such freight and reap its profits.

These considerations make it evident that the Legislature intended and empowered these roads, or any future roads, to unite by building tracks from one to the other for the passage of their loaded cars. This power being conferred on corporations, which had built, or were empowered to construct railroads, and had already the power in so doing, to exercise the right of eminent domain, and to purchase land for the purposes of the track needed no additional power to be conferred in order to carry out the objects of the Legislature. The corporations had already the necessary power for this purpose, as far as they were authorized to build roads. It was only necessary to

authorize them to build farther in order to make the connections contemplated, and they possessed the power already to carry out the work authorized. We do not think this question is one that admits of doubt, or requires an extended discussion or reference to authority or descisions of other courts to sustain so obvious a proposition.

We need not discuss the question as to whether this trestle has been constructed in the best manner to avoid unnecessary obstruction or travel on the street or highway. Suffice it to say, that his honor's charge was based on the idea of a right, which, under the circumstances, it would be impossible to enjoy, as it was, and had been for many years, impossible to pass from the Louisville road without crossing a street or highway.

Without further discussion, let the case be reversed and remanded for a new trial.